**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| SPEC'S FAMILY PARTNERS, LTD., | ) | |
|      Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2:14-cv-02995-JPM-cgc |
| FIRST DATA MERCHANT SERVICES | ) | |
| CORP., | ) | |
|      Defendant. | ) | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND**
**DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support, filed on August 17, 2016. (ECF No. 107.) Defendant responded in opposition on September 19, 2016. (ECF No. 120.) Plaintiff filed a reply on October 6, 2016. (ECF No. 125.)

Also before the Court is Defendant's Motion for Summary Judgment, filed on September 19, 2016. (ECF No. 121.) Plaintiff responded in opposition on October 20, 2016. (ECF No. 127.) Defendant filed a reply on November 7, 2016. (ECF No. 128.)

For the following reasons, the Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's Motion for Summary Judgment.[1]

## I.    BACKGROUND

### A.    Factual Background

This case arises out of two data security breaches at Plaintiff Spec's Family Partners, Ltd. ("Plaintiff") which allegedly compromised customer payment card information between October

---

[1] In its Motion for Summary Judgment, Defendant requested an in-person hearing on the Motion. (ECF No. 121 at PageID 2560.) The Court held a telephonic discussion on the cross-motions for summary judgment on January 10, 2017. (ECF No. 138.)

31, 2012 and September 14, 2013 ("Breach Window One") and between October 14, 2013 and February 19, 2014 ("Breach Window Two").  (ECF No. 1 at PageID 6; ECF No. 36 at PageIDs 404-05.)  Plaintiff asserts causes of action for breach of contract and declaratory judgment against its transaction processing servicer, First Data Merchant Services Corporation ("Defendant").  (ECF No. 1 at PageIDs 9-10.)  Plaintiff claims that Defendant is wrongfully withholding $2,254,408.21 in violation of their contract to reimburse Citicorp Payment Services Inc. ("CPSI") for assessments imposed by MasterCard in connection with Breach Window One.  (Id. at PageIDs 7, 9.)

In 2001, Plaintiff and EFS National Bank, Defendant's predecessor, entered into an EFS National Bank Merchant Agreement ("the Merchant Agreement"), under which Defendant agreed to provide credit and debit card processing services for Plaintiff.  (ECF No. 1-3.)  Attached to the Merchant Agreement, and incorporated therein, are Schedule 1, which sets out a schedule of fees and charges; Schedule B, which sets out the rules, policies, and procedures pursuant to which Defendant agreed to provide processing services to Plaintiff; Schedule C, which lists the debit networks Defendant agreed to provide Plaintiff access to; and Schedule D, which authorizes Defendant to transfer bankcard settlement funds into a designated settlement account and debit that account to cover its service fees.  (Id.)

In 2006, First Data entered into a contract with Citicorp Payment Services, Inc. ("CPSI"), a sponsor bank, to contract with and submit transactions to the Card Brands on behalf of merchants.  (ECF No. 121 at PageID 2544.)  Pursuant to its Contract with CPSI, Defendant is liable to CPSI for Assessments related to breaches and/or PCI DSS non-compliance by Spec's.  (ECF No. 1 at PageID 7; ECF No. 36 at PageID 405; ECF No. 121 at PageID 2544.)

In September 2007, Plaintiff and Defendant amended the Merchant Agreement ("the Amendment") to extend the initial term of the Merchant Agreement to three years from the execution of the Amendment and modified Schedule 1 of the Merchant Agreement.  (ECF No. 1-4.)  The Merchant Agreement automatically renews annually, absent written notice of termination from either party; to date, neither party has terminated the Agreement.  (ECF No.  1 at PageID 5.)

The Merchant Agreement incorporates the rules and regulations of the card brands Visa and MasterCard ("the Card Brands").  (See Visa Core Rules and Visa Product and Service Rules ("Visa Rules"), ECF No. 121-10; MasterCard Security Rules and Procedures ("MasterCard Rules"), ECF No. 121-9 (collectively "the Card Brand Rules").)  Pursuant to the Card Brand Rules, "the Card Brands have the right to impose assessments on Acquiring Banks[, such as CPSI,] when the merchants to whom they provide acquiring services suffer a breach and/or are found to be non-compliant with the" Payment Card Industry Data Security Standard ("PCI DSS").  (ECF No. 1 at PageID 7; ECF No. 36 at PageID 405.)  These assessments may include losses incurred to replace compromised cards, losses incurred to refund customers for fraudulent charges made on compromised cards, and case management assessments ("Assessments").  (ECF No. 1 at PageID 7; ECF No. 36 at PageID 405.)

The Merchant Agreement obligates Plaintiff to indemnify Defendant for "any and all claims, demands, losses, costs, liabilities, damages, judgments, or expenses arising out of or relating to" certain circumstances, (ECF No. 1-3 § 15(b), PageID 20), but forecloses Plaintiff's liability for "special, indirect, incidental, or consequential losses or damages" (id. § 15(d), PageID 20).  In addition, the Merchant Agreement requires Plaintiff to pay "any and all third-party fees and charges associated with the use of [Defendant's] services."  (Id. § 5, PageID 18.)

The Merchant Agreement further provides that Plaintiff "will be bound and abide by the rules and procedures of the applicable card issuers and networks" (id. at Schedule B(V), PageID 26); that Plaintiff will not "sell, purchase, provide, or exchange card account information . . . to any third party" (id.); and that the parties "will each safeguard all data relating to the other's business or to the business of customers obtained pursuant to this Agreement or the transactions contemplated hereby . . . ." (id. at Schedule B(VI), PageID 27.)

### B.    Procedural Background

Plaintiff filed the Complaint on December 17, 2014.  (ECF No. 1.)  On January 29, 2015, Defendant filed a Motion to Dismiss (ECF No. 17) and Plaintiff filed a Motion for Judgment on the Pleadings on May 26, 2015 (ECF No. 39).  On September 29, 2015, the Court entered an Order Denying Defendant's Motion to Dismiss and Denying Plaintiff's Motion for Judgment on the Pleadings.  (ECF No. 64).  In the Order, the Court held that

> the Assessments do not constitute 'third-party fees and charges,' but are consequential damages excluded from indemnification.  Plaintiff, therefore, was not contractually obligated to indemnify Defendant for the Assessments under Section 15(b) nor was Plaintiff required to reimburse Defendant for the Assessments under Section 5.  The Court has insufficient information to determine, however, whether Plaintiff was required to compensate Defendant for breaches of Schedules B(V) and B(VI).

(Id. at 24-25.)

On October 6, 2015, Plaintiff filed a Motion for Reconsideration of Part III(E) of the Court's Order (ECF No. 66)  On November 9, 2015, the Court entered an Order Denying Plaintiff's Motion for Reconsideration.  (ECF No. 70).  In the Order, the Court held that

> Plaintiff's potential liability may include direct damages.  If Plaintiff breached Schedule B, then it would be liable for direct damages for its breach of contract. . . . The amount of said damages would not necessarily be the full amount of, or even related to, the amount that Defendant withheld to cover the Assessments. . . . Plaintiff did not address the possibility that Defendant lawfully withheld funds to compensate for a direct breach of Sections V or VI.

4

(Id. at PageIDs 794-95.)

On August 17, 2016, Plaintiff moved for summary judgment.  (ECF No. 107.)  Defendant responded in opposition on September 19, 2016.  (ECF No. 120.)  Plaintiff filed a reply brief on October 6, 2016.  (ECF No. 125.)

On September 19, 2016, Defendant moved for summary judgment.  (ECF No. 121.) Plaintiff responded in opposition on October 20, 2016.  (ECF No. 127.)  Defendant filed a reply brief on November 7, 2016.  (ECF No. 128.)  The Court held a telephonic discussion with the parties regarding the cross-motions for summary judgment on January 10, 2017.  (ECF No. 138.)

## II.     LEGAL STANDARD

### A.  Summary Judgment

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense."  Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party."  Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact."  Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"Once the moving party satisfies its initial burden, the burden shifts to the nonmoving

5

party to set forth specific facts showing a triable issue of material fact." <u>Mosholder</u>, 679 F.3d at 448-49; <u>see also</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 587. "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." <u>Martinez v. Cracker Barrel Old Country Store, Inc.</u>, 703 F.3d 911, 914 (6th Cir. 2013) (quoting <u>Chapman v. UAW Local 1005</u>, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)); <u>see also</u> <u>Kalich v. AT & T Mobility, LLC</u>, 679 F.3d 464, 469 (6th Cir. 2012).

To "show that a fact is, or is not, genuinely disputed," both parties must do so by "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact." <u>Bruederle</u>, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); <u>see also</u> <u>Mosholder</u>, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting <u>Celotex Corp.</u>, 477 U.S. at 325)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" <u>Martinez</u>, 703 F.3d at 914 (alteration in original) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)).

"The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'" <u>Pharos Capital Partners, L.P. v. Deloitte & Touche</u>, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting <u>Tucker v. Tennessee</u>, 539 F.3d 526, 531 (6th Cir. 2008), <u>abrogation recognized by</u> <u>Anderson v. City of Blue Ash</u>, 798 F.3d 338 (6th Cir. 2015)). "'[J]udges are not like pigs, hunting for truffles' that

might be buried in the record." Emerson v. Novartis Pharm. Corp., 446 F. App'x 733, 736 (6th Cir. 2011) (alteration in original) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).

### B. Contract Interpretation

The Merchant Agreement is subject to Tennessee contract law.  (See ECF No. 1-3 at PageID 19 ("This Agreement shall be construed and enforced in accordance with the internal laws of the State of Tennessee without reference to choice of law rules.").)

"In 'resolving disputes concerning contract interpretation, [the Court's] task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language.'" Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 889-90 (Tenn. 2002) (quoting Guiliano v. Cleo, Inc., 995 S.W.2d 88, 95 (Tenn. 1999)).  "This determination of the intention of the parties is generally treated as a question of law because the words of the contract are definite and undisputed . . . ." Id. at 890.  "A court's initial task in construing a contract is to determine whether the language of the contract is ambiguous." Id. "Ambiguity, however, does not arise in a contract merely because the parties may differ as to interpretations of certain of its provisions.  A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." Crye-Leike, Inc. v. Carver, 415 S.W.3d 808, 816 (Tenn. Ct. App. 2011).  "The court will not use a strained construction of the language to find an ambiguity where none exists." Id.

If the language of the contract is unambiguous, the court "should not go beyond its four corners to ascertain the parties' intention" because the "literal meaning controls the outcome of the dispute." Adkins v. Bluegrass Estates, Inc., 360 S.W.3d 404, 412 (Tenn. Ct. App. 2011) (internal quotation marks omitted); see also Swanson v. Mid-South Title Ins. Corp., 692 S.W.2d

415, 419 (Tenn. Ct. App. 1984) ("In the absence of fraud or mistake a contract must be
interpreted and enforced as written even though it contains terms which may be thought harsh
and unjust.").

In determining the parties' intent, the court "does not attempt to ascertain the parties'
state of mind at the time the contract was executed, but rather their intentions as actually
embodied and expressed in the contract as written." Rainer v. Stansell, 836 S.W.2d 117, 119
(Tenn. Ct. App. 1992). "'Only if ambiguity remains after the court applies the pertinent rules of
construction does [the legal meaning of the contract] become a question of fact' appropriate for a
jury." Planters Gin, 78 S.W.3d at 90 (alteration in original) (quoting Smith v. Seaboard Coast
Line R.R. Co., 639 F.2d 1235, 1239 (5th Cir. 1981)). In Tennessee, "ambiguities in a contract
are construed against the drafter." Crye-Leike, 415 S.W.3d at 816.

When a term is missing in a contract, and the term cannot be filled by a statute, such as
the UCC, the court should not supply the missing term. See Noe v. PolyOne Corp., 520 F. 3d
548 (6th Cir. 2004) (affirming the district court's refusal to modify an arbitration agreement to
add a severability clause where no such clause existed); Hillsboro Plaza Enterprises v. Moon,
860 S.W.2d 45 (Tenn. Ct. App. 1993) (where contract was lacking a cancellation clause, the
court will not provide one by implication). If the omitted term is essential to the contract, the
court may supply a term that comports with community standards of fairness and policy.
Restatement (Second) of Contracts, § 204 (1981).

### C. Material Breach

The determination of whether a breach is material requires consideration of the following
factors:

> (a) the extent to which the injured party will be deprived of the benefit which he
> reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

United Brake Systems, Inc. v. American Environmental Protection, Inc., 963 S.W.2d 749, 756 (Tenn. Ct. App. 1997) (quoting Restatement (Second) of Contracts § 241 (1981)).

"A party who has materially breached a contract is not entitled to damages stemming from the other party's later material breach of the same contract." White v. Empire Exp., Inc., 395 S.W.3d 696 (Tenn. Ct. App. 2012) (quoting McClain v. Kimbrough Const. Co., 806 S.W.2d 194, 199 (Tenn. Ct. App. 1990)).[2] "[I]n cases where both parties have not fully performed, it is necessary for the courts to determine which party is chargeable with the first uncured material breach." United Brake Systems, 963 S.W.2d at 756 (quoting McClain, 806 S.W.2d at 199).

A party may cure a material breach by "engag[ing] in subsequent conduct that substantially performs or performs without a material failure." Anacapa Technology, Inc. v. ADC Telecommunications, Inc., 241 F. Supp. 2d 1016 (D. Minn. 2002) (citing Restatement (Second) Contracts § 237 cmt. b (1981) ("Even if the failure is material, it may still be possible to cure it by subsequent performance without material failure.")); 2 E. Allan Farnsworth,

---

[2] "Ordinarily, a party who first materially breaches may not recover under the contract. . . . A non-breaching party may nevertheless waive its right to assert first material breach as a bar to recovery if it accepts the benefits of the contract with knowledge of a breach." Madden Phillips Const., Inc. v. GGAT Development Corp., 315 S.W.3d 800 (Tenn. Ct. App. 2009) (citation omitted). Waiver, however, is an affirmative defense, and must be properly raised before the Court, typically in an answer to a complaint or counterclaim. Id. at 813 n.9; Tenn. R. Civ. P. 8.03. The party who asserts waiver "has the burden of proving it by a preponderance of the evidence." Madden Phillips, 315 S.W.3d at 813. Neither party has raised the affirmative defense of waiver in this case.

Farnsworth on Contracts § 8.17 (a breach can be cured "by correcting the deficiency in performance.")).  Cure gives the breaching party "a second chance to perform according to the contract," and a chance to cure the breach to the level of substantial performance.  Id. at 1020 (quoting 8 Catherine M.A. McCauliff, Corbin on Contracts ¶ 36.7).  Though the question of cure is usually one of fact, a court may decide this question as a matter of law "where there are no material facts in dispute and only the legal conclusions to be drawn from the facts remain in doubt."  Id. at 1021.

### D.  Direct and Consequential Damages

Tennessee contract law enables a party to "recover all damages that are the reasonably foreseeable consequence of a breach of the contract."  Wilson v. Dealy, 434 S.W.2d 835, 838 (Tenn. 1968).  Direct damages are those that "arise naturally or ordinarily from a breach of contract; they are damages which, in the ordinary course of human experience, can be expected to result from a breach."  Moore Const. Co., Inc. v. Clarksville Dept. of Electricity, 707 S.W.2d 1, 14 (Tenn. Ct. App. 1985) (quoting Roanoke Hospital Ass'n v. Doyle & Russell, Inc., 214 S.E.2d 155, 160 (1975)).  The extent of direct damages "will depend on the unique facts of each case."  Id.  The party "must present adequate proof of these damages in order to recover."  Id. For example, Tennessee allows "lost or expected profits" to be recoverable as damages for breach of contract, "provided they can be proved with reasonable certainty, and are not in fact remote or speculative."  Morristown v. Lincoln-Mercury, Inc. v. Roy N. Lotspeich Pub. Co., 298 S.W.2d 788 (Tenn. Ct. App. 1956).  "The actual calculation of damages, if the amount is within legal limits, is a question of fact."  Poole v. Union Planters Bank, N.A., 337 S.W.3d 771 (Tenn. Ct. App. 2010).

### E.  Declaratory Judgment

Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration. . . ." 28 U.S.C. § 2201. The Federal Rules of Civil Procedure "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201." Fed. R. Civ. P. 57. Accordingly, "the requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions;" thus, "the action is commenced by filing a complaint." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2768 (3ed. 1998). In other words, "[a] request for declaratory relief is properly before the court when it is pleaded in a complaint for declaratory judgment. Requests for declaratory judgment are not properly before the court if raised only in passing, or by motion." Arizona v. City of Tucson, 761 F.3d 1005, 1010 (9th Cir. 2014) (citation omitted).

## III.    ANALYSIS

Plaintiff seeks summary judgment on the ground that the Limitation of Liability clause excludes Plaintiff's liability for the Assessments as consequential damages. (ECF No. 107.) Defendant seeks summary judgment as to the Complaint on the ground that Spec's is liable for the Assessments. (ECF No. 121 at PageID 2542.)

### A.  Plaintiff's Breach of Contract

Plaintiff concedes that it "was in technical breach of the agreement for not being fully compliant with all 12 PCI DSS standards." (ECF No. 138 at PageID 3661.) The Court agrees, but finds that Plaintiff's breach was not material, or was subsequently cured for the reasons explained below.

11

### 1. Schedule B(V)

Section V of Schedule B provides,

> Merchant agrees that it will be bound and abide by the rules and procedures of the applicable card issuers and networks selected by Merchant. . . . Merchant further warrants and agrees that it shall not, without the cardholder's consent, sell, purchase, provide, or exchange card account information in the form of sales drafts, mailing lists, tapes, or any other media obtained by reason of a transaction or otherwise, to any third party other than to Merchant's agents approved by EFSNB . . . .

(ECF No. 1-3 at PageIDs 26-27.)  The rules of the Card Brands, Visa and MasterCard, are therefore incorporated into the Merchant Agreement through the language of Schedule B(V).  (See ECF Nos. 121-9, 121-10.)

### 2. Visa Rules

The Visa Rules[3] require Members to "[e]nsure that agreements and contracts with agents and Merchants clearly establish their responsibilities to meet Visa standards."  (ECF No. 121-10 at PageID 2834.)  The rules also require Members to "ensure that all agents and Merchants with access to account or Transaction Information comply with the Payment Card Industry Data Security Standard (PCI DSS)," and, upon request, "certify to Visa that agents and Merchants are in compliance with the Payment Card Industry Data Security Standard."  (ECF No. 121-10 at PageID 2834.)  The Visa Rules allow Visa to issue Assessments against Acquirers, such as CPSI, if certain requirements have been met, one of which is non-compliance with the PCI DSS.  (ECF

---

[3] Defendant includes an attachment to the Visa Rules titled "Payment Card Industry Data Security Standard Requirements."  (ECF No. 121-10 at PageID 2848.)  This attachment was not previously included in the Visa Rules submitted with Defendant's Motion to Dismiss on February 26, 2015 and contains a different date than the document entitled "Visa Core Rules and Visa Product Service Rules."  (See ECF No. 19-1.)  It is unclear whether the attachment constituted part of the "Visa Rules" to which Defendant and Plaintiff originally agreed; therefore, the Court does not include the attachment in its analysis.

No. 121-10 at PageIDs 2839-40.)  The Visa Rules discuss the liability of an Acquirer if its

Merchant experiences an Account Data Compromise Event.  (<u>Id.</u> at PageID 2841.)

Visa issued an Assessment to CPSI on June 28, 2016.  (ECF No. 121-15.)  In the

Assessment, Visa found that nine out of twelve PCI DSS requirements had not been fully

complied with.  (ECF No. 121-15 at PageIDs 3044-45.)

### 3.  MasterCard Rules

The MasterCard Rules require that "all Customer agents that store, process, or transmit

Card, Cardholder, or Transaction data on the Customer's behalf adhere to the . . . PCI DSS."

(ECF No. 121-9 at PageID 2805.)  The MasterCard Rules define "agent" as "[a]ny entity that

stores, processes, or has access to Account data by virtue of its contractual or other relationship,

direct or indirect, with a Customer. . . . Agents include, but are not limited to, Merchants, Third

Party Processors (TPPs), and Data Storage Entities (DSEs)."[4]  (ECF No. 121-9 at PageID 2805.)

The MasterCard Rules also state that "[c]ompliance with the Payment Card Industry Data

Security Standard is required for all . . . Merchants . . . and any other person or entity that a

Customer permits, directly or indirectly, to store, transmit, or process Account data."  (ECF No.

121-9 at PageID 2820.)

---

[4]  Though the document states that the definitions apply to Section 10.2 of the
MasterCard Rules, a separate list of definitions is not included in Section 10.1 or the remainder
of the MasterCard Rules.  As a result, the Court reads the rules as a whole to "give meaning and
effect to all of its provisions," construing all the provisions in the rules "in harmony with each
other . . . to promote consistency and avoid repugnancy between the various provisions."
<u>Diversified Energy Inc. v. Tenn. Valley Auth.</u>, 223 F.3d 328, 339 (6th Cir. 2000); <u>Guiliano v.
Cleo, Inc.</u>, 995 S.W.2d 88, 95 (Tenn. 1999).

**4. Plaintiff Breached the Agreement by Failure to Comply with the PCI DSS**

The Court finds that the Merchant Agreement required Plaintiff to comply with the PCI DSS as one of the "rules and procedures of the applicable card issuers and networks" referenced in Schedule B(V).  It is undisputed that Plaintiff is a "merchant" as referenced in the Card Brand Rules.  (ECF No. 127-1 at PageID 3313 ("Spec's is a merchant, not a member [typically, acquirers like Citicorp] under Visa Rules.").)  Additionally, Plaintiff admits that the Card Brand Rules expected that merchants, such as Plaintiff, would comply with the PCI DSS.  In the Complaint, Plaintiff stated that the rules allow the Card Brands to impose "assessments on Acquiring Banks [, such as CPSI,] when the merchants to whom they provide acquiring services suffer a breach and/or are found to be non-compliant with the PCI DSS."  (ECF No. 1 at PageID 7; ECF No. 36 at PageID 405.)  Plaintiff also stated its understanding that, pursuant to Defendant's contract with CPSI, "Defendant is liable for Assessments made against CPSI, if such Assessments relate to breaches and/or PCI DSS non-compliance by Spec's."  (ECF No. 1 at PageID 7; ECF No. 36 at PageID 405.)

Based on the above discussion, it is apparent that Spec's is a "merchant" as contemplated by the Rules, and that the Rules in conjunction with the Merchant Agreement required Spec's to comply with the PCI DSS.  Though the Card Brand Rules may not directly impose liability on merchants when PCI DSS non-compliance events occur, the rules do specify that merchants be supervised by entities such as Defendant and CPSI, who, in turn, ensure that the merchants comply with the PCI DSS.  (ECF No. 121-10 at PageID 2834; ECF No. 121-9 at PageID 2805.) The rules contain a requirement that merchants comply with the PCI DSS.  (ECF No. 121-10 at PageID 2834; ECF No. 121-9 at PageID 2820.)  Pursuant to Schedule B(V) of the Merchant

Agreement, when Plaintiff agreed that "it will be bound and abide by the rules and procedures of the applicable card issuers" (ECF No. 1-3 at PageID 26), it agreed to comply with the PCI DSS. Not only is this the natural construction of the language in the Merchant Agreement, it is also the most likely interpretation of the parties' intent. The Court finds that the plain language of the Card Brand Rules contemplates that the Merchant comply with the PCI DSS, and that compliance is a requirement imposed upon Spec's by incorporation of the Card Brand Rules in Section V of Schedule B. As a result, Spec's failure to comply with the PCI DSS constitutes a breach of the requirement to "abide by the rules and procedures of the applicable card issuers" in Schedule B(V) of the Merchant Agreement.

### B. Plaintiff's Breach was Not Material, or was Cured

Compliance with the PCI DSS is one of the benefits First Data reasonably expected to receive from the Agreement, and one of the key obligations of merchants as contemplated by the network of relationships between the merchant, the transaction processor, and the Card Brands. As such, Plaintiff's failure to comply with the PCI DSS undoubtedly constituted a breach of the Merchant Agreement. The fact that both parties continue to perform under the Agreement, however, supports the conclusion that Defendant did not consider the breach material, Plaintiff has cured the failure, or provided reasonable assurances that it will comply with the PCI DSS in the future. See United Brake Systems, 963 S.W.2d at 756; Restatement (Second) of Contracts § 241 (1981).

In November 2012, during Breach Window One, Spec's began focusing on becoming more PCI compliant. (ECF No. 120-16 at PageID 2069 ("Based on the information I have been able to get to this point, we have a lot of work to do on the PCI front.").) In February 2013, Spec's contacted Accudata with a request for assistance in PCI DSS compliance. (ECF No. 120-

11.)  Accudata conducted an assessment of Spec's PCI compliance status in November 2013, during Breach Window Two, and issued a report in December 2013 and July 2016.  (ECF No. 120-10 at PageID 1938; 120-17.)  In 2014, following Breach Windows One and Two, Visa issued a $10,000 fine to CPSI for Spec's non-compliance with the PCI DSS.  (ECF No. 107-43 at PageID 1517; ECF No. 127-1 at PageIDs 3323-24; ECF No. 120-39 at PageID 2387.)  The fine was passed on to First Data, and Spec's indemnified First Data for the fine pursuant to Section 15(b)(ii) of the Merchant Agreement.  (Id.; ECF No. 107 at PageID 1277.)  Spec's does not contest its liability for the Visa fine.  (Id.)  MasterCard did not impose any fines specifically for Spec's failure to comply with the PCI DSS.  (ECF No. 127-1 at PageID 3324.)

Since the time of the breach, Spec's has shown a "likelihood that [Spec's] will cure [its] failure, taking account of all the circumstances including any reasonable assurances."  United Brake Systems, 963 S.W.2d at 756.  Spec's has taken steps to attempt to cure its noncompliance with the PCI DSS by contacting Accudata for assistance.  Additionally, the fact that the parties continue to perform under the Merchant Agreement to this day lends itself to the conclusion that, following the breach, Spec's provided reasonable assurances that it would comply with the PCI DSS in the future.  All of these factors indicate that First Data did not treat Spec's breach of the Merchant Agreement by noncompliance with the PCI DSS as a material breach.

Even if that Spec's non-compliance with the PCI DSS was a material breach of the Merchant Agreement, however, given Spec's payment of the Visa noncompliance fine, the steps that Spec's has taken to attempt to cure its noncompliance with the PCI DSS, and the fact that the parties continue to perform under the Merchant Agreement, it appears that Spec's has now cured its breach.  If Spec's has cured its breach, it is no longer chargeable with the "first and

16

cured material breach" and would not be precluded from recovery for damages from any later material breach of the contract by First Data.  See United Brake Systems, 963 S.W.2d at 756.

### C.  Defendant's Material Breach

Spec's argues that it is entitled to summary judgment on Count One (Breach of Contract) of the Complaint because First Data materially breached the Merchant Agreement by withholding funds from Spec's in the amount of the MasterCard Assessment.  (ECF No. 1 at PageID 9.)  First Data argues that it did not breach the Merchant Agreement by withholding these funds because it was entitled to the funds as either consequential or direct damages.  (ECF No.  121.)

Section 5 of the Merchant Agreement lays out the parties' responsibilities regarding payment for the services described in the Agreement.  (ECF No. 1-3 at PageIDs 17-18.)  Specifically, Section 5 provides that "Provider will pay Merchant daily through the automated clearinghouse ("ACH") system for all authorized transactions."  (Id.)  The section specifies that the transfer of funds in connection with the services referenced in the Agreement to Merchant will occur through a designated settlement account.  (Id.)  The transfer of bankcard settlement funds to cover the entire amount of each authorized transaction, therefore, is a benefit to which Spec's is entitled under the Agreement.  Accordingly, the Court finds that First Data materially breached Section 5 of the Agreement by unilaterally diverting funds from the settlement account to reimburse itself for the Assessments.

The sole remedy specified in the Merchant Agreement for a material breach of contract is termination of the contract.  (ECF No. 1-3 at PageID 19 ("either party has the right to terminate this Agreement immediately and without notice in the event that the other party is guilty of a material breach of this Agreement or violates the rules or regulations of a Credit Card Issuers.").)

The Merchant Agreement is silent on the question of whether a party may withhold funds or create a reserve account to compensate for a breach of contract.  First Data executive Louis Sablich stated his understanding that there is "no reserve language" in the parties' Merchant Agreement.  (ECF No. 107-4 at PageID 1328; ECF No. 107-19 at PageID 1423.)

Given that the contract only provides one remedy for a material breach – termination – and Defendant is barred from receiving the Assessments due to the Limitation of Liability clause as further discussed below, the Court finds that the Defendant materially breached Section 5 of the Merchant Agreement by withholding funds in the amount of the MasterCard Assessment.[5] Therefore, Plaintiff's Motion for Summary Judgment on Count One (Breach of Contract) is GRANTED.  Defendant's Motion for Summary Judgment on Count One is DENIED.

### D.  Count Two (Declaratory Judgment)

Plaintiff argues that it is "entitled to a declaratory judgment that Spec's is not liable for the Assessments and that First Data may not withhold funds otherwise due and owing to Spec's." (ECF No. 107 at PageID 1292.)  Plaintiff argues that it is entitled to summary judgment on Count Two (Declaratory Judgment) because "Defendant has no right to indemnity from Spec's for any Future Assessments because such Assessments are consequential losses."  (ECF No. 1 at PageID 10.)  Defendant argues that it is entitled to summary judgment on Count Two because Spec's is required to indemnify Defendant from the Assessments as direct damages.[6]

---

[5] To the extent that Defendant argues that Plaintiff is barred from recovery due to Plaintiff's prior breach, the Court has found that Plaintiff's prior breach was not material and/or was cured.  Therefore, Defendant's material breach is the "first uncured material breach."  See United Brake Systems, 963 S.W.2d at 756.

[6] In support of this argument, Defendant references several cases, the facts of which are distinguishable from the instant matter, because the merchant in each case did not contest its liability for the assessments pursuant to its agreement with the credit card processor.  See PF Chang's China Bistro, Inc. v. Federal Insurance Company, 2016 WL 3055111 (D. Ariz. 2016) (discussing whether assessments are covered under an insurance policy between the merchant

As discussed in the Court's previous Orders,[7] Plaintiff is not liable for the Assessments as they are consequential damages excluded by the Limitation Clause, even if the Assessments were a result of breaches, negligence, or PCI DSS non-compliance by Plaintiff.  (See id.)[8]  The Court therefore declares that Defendant is not entitled to withhold funds to indemnify itself for the MasterCard Assessments, Visa Assessments, or any future assessments in connection with Breach Window One and Breach Window Two because such assessments are consequential damages excluded by the Merchant Agreement.  The Court GRANTS Plaintiff's Motion for

and the insurance company); Jethro Holdings, LLC v. MasterCard International, Inc., 51 Misc.3d 1217 (A) (N.Y. Sup. Ct. May 3, 2016) (holding that the merchant was not entitled to recover the amount of the assessments against MasterCard because no direct contractual relationship between MasterCard and the merchant existed).

[7] The Court does not revisit the findings made as a matter of law in its previous Orders on the Motion to Dismiss and Motion for Judgment on the Pleadings.  (ECF Nos. 64 and 70.)  The parties' arguments regarding the Sections 5 and 15 of the Merchant Agreement were evaluated in the Court's previous Orders, and interpreted as a matter of law.  (See id.)  Defendant attempts to argue that the language of the agreement is ambiguous by citing to evidence outside of the contract.  (See, e.g., ECF No. 120 at PageIDs 1581-82; ECF No. 120-3; ECF No. 120-6; ECF No. 120-7.)  The Court, however, did not find any ambiguity in the language of the Merchant Agreement regarding the classification of the Assessments as consequential damages and Plaintiff's subsequent lack of liability for the Assessments under Section 5 and 15.  (See ECF Nos. 64 and 70.)  The Court therefore will not "go beyond [the contract's] four corners to ascertain the parties' intention" because the "literal meaning controls the outcome of the dispute."  Adkins v. Bluegrass Estates, Inc., 360 S.W.3d 404, 412 (Tenn. Ct. App. 2011) (internal quotation marks omitted).

[8] Defendant has identified three types of damages that resulted from Plaintiff's alleged breach of the Merchant Agreement: (1) the Assessments, (2) employment costs, and (3) attorneys' fees.  (ECF No. 130 at PageID 3675.)  Defendant asserts that it has incurred, and is withholding, direct damages in the form of employment costs, totaling $146,232.14 as of June 2016, and attorneys' fees in the amount of $404,344.86 as of June 2016.  (ECF No. 107-11 at PageIDs 1372-73.)  Defendant asserts that these damages are direct damages for which Plaintiff is liable.  (ECF No. 130 at PageID 3675.)  Plaintiff argues that all of the identified damages are consequential damages, and therefore are excluded by the Limitation of Liability clause in the agreement.  (ECF No. 138 at PageIDs 3675-78.)  As the employment costs and attorney's fees withheld by Defendant have not been pled in the Complaint, however, the Court lacks the authority to rule on declaratory judgment regarding Defendant's entitlement to these funds under Section 14 or otherwise.  See Arizona v. City of Tucson, 761 F.3d 1005, 1010 (9th Cir. 2014).

Summary Judgment on Count Two (Declaratory Judgment) and DENIES Defendant's Motion for Summary Judgment on Count Two.

### E.  Count Three (Attorneys' Fees)

In Count Three of the Complaint, Spec's asserts that it is "entitled to indemnification for the reasonable attorneys' fees and costs incurred as a result of Defendant's material breach and threaten future breach of the Merchant Agreement," citing Section 15(b) of the Merchant Agreement.  (ECF No. 1 at PageID 10.)  The Court having found that Defendant materially breached the Merchant Agreement by retaining funds from the settlement account, Plaintiff is entitled to attorneys' fees associated with Defendant's breach of the Agreement.  Any application for attorney's fees pursuant to Count Three should be submitted no later than August 7, 2017.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment on Counts One, Two, and Three of the Complaint is GRANTED.  Defendant's Motion for Summary Judgment on Counts One, Two, and Three of the Complaint is DENIED.  Plaintiff shall file any motion for attorney's fees pursuant to Count Three of the Complaint no later than Monday, August 7, 2017.

**IT IS SO ORDERED,** this 7th day of July, 2017.

/s/ Jon P. McCalla
JON P. McCALLA
U.S. DISTRICT COURT JUDGE